IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                             Case No. 3:19-md-2885

                                                        Judge M. Casey Rodgers
                                                        Magistrate Judge Gary R. Jones
This Document Relates to:

*3M Company, et al. v. Top Class Actions, LLC*
Case No. 3:20-mc-74
_____/

# ORDER

This miscellaneous matter stems from a pending multidistrict litigation action in this Court (*In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-mc-2885-MCR-GRJ (N.D. Fla.)).  Pending before the Court is the MDL Defendants' motion to compel compliance with a discovery subpoena served on non-party Top Class Actions, LLC ("TCA") pursuant to Federal Rule of Civil Procedure 45.  ECF No. 1.

The MDL Defendants' motion to compel has been thoroughly briefed. While the motion was pending in the United States District Court for the District of Arizona, TCA filed a response in opposition, ECF No. 10, the MDL Defendants filed a reply memorandum, ECF No. 12, and TCA and the MDL Defendants filed a "brief containing stipulations of fact and law[] and

identifying the remaining legal disputes[,]" ECF No. 17.  Then, at the Arizona district court's request, TCA and the MDL Defendants filed supplemental briefs addressing whether TCA has standing to assert attorney-client privilege and work product protection on behalf of the MDL Plaintiffs, ECF Nos. 23, 29, 31.

After the United States Judicial Panel on Multidistrict Litigation transferred to this Court the MDL Defendants' motion, ECF No. 45, the undersigned granted the MDL Plaintiffs' Leadership Counsel leave to intervene under Federal Rule of Civil Procedure 24(a)(2) and set an additional briefing schedule limited to the MDL Plaintiffs' opposition, ECF No. 48.  The MDL Plaintiffs filed a response to the MDL Defendants' motion to compel, ECF No. 50, and the MDL Defendants filed a reply memorandum, ECF No 51.

Accordingly, the MDL Defendants' motion to compel is ripe for consideration.  For the reasons discussed below, the MDL Defendants' motion to compel is due to be **GRANTED**.

## I. BACKGROUND

TCA runs a website (http://www.topclassactions.com) "that provides information, among other things, about class actions, class action settlements, and class action investigations."  ECF No. 10-1 at 1.  TCA's

website contains two categories of content for its viewers—attorney advertising and articles or news alerts (written by TCA) concerning particular class actions (or, obviously, other mass tort cases). *Id.*; ECF No. 10 at 2.

The "attorney advertising" on TCA's website principally consists of articles paid for by attorneys looking for potential plaintiffs or putative class members (and identified as such). ECF No. 10-1 at 1. TCA works with the advertising attorney to determine the content for the article(s), during which the attorney shares his or her thoughts about what information a potential plaintiff might need and his or her thoughts, opinions, and mental impressions about the content. *Id.* at 2. TCA exchanges drafts of the advertisements with the attorney, and TCA holds in confidence any feedback from the attorney. *Id.*

Some of TCA's advertising articles include a form for a potential plaintiff or putative class member to fill out so the potential plaintiff or putative class member is contacted by an attorney. *Id.* When the potential plaintiff or putative class member inputs information into the form and clicks "submit," the information is transmitted directly to the law firm sponsoring the advertisement. *Id.* TCA retains the information submitted on the form in a database for the "sole purpose" of communicating about the

3

advertising with law firms but otherwise holds the information in confidence. *Id.* TCA asserts that it "does not review the content of the form submissions for any purpose other than assisting the law firm with its marketing." *Id.*

Relevant here, TCA was engaged by attorneys to publish articles about the claims in this MDL. ECF No. 10-1 at 2; *see also, e.g.*, ECF No. 10-2 at 1 ("3M Ear Plugs Were Defective, Claim Servicemembers"); *id. at 4* ("3M Combat Arms Earplugs Allegedly Defective"); *id.* at 7 ("3M Earplug Lawsuit Investigation into Military Hearing Loss, Tinnitus"); *id.* at 11 ("3M Claims to Have Immunity in Military Earplugs Lawsuits"); *id.* at 14 ("Over 1,000 3M Military Ear Plugs Lawsuits Have Been Filed Alleging a Dangerous Defect"). Each published article was accompanied by a form, viewable on the sidebar of the browser, soliciting viewers to "join a free 3M Ear Plugs class action lawsuit investigation" by providing their contact information, relevant military history, and supposed injuries. *See, e.g.*, ECF No. 10-2 at 1–3. TCA advised viewers of the following before they could submit a completed form:

> **Any information you submit to Top Class Actions may be shared with attorneys or law firms to facilitate formation of an attorney-client relationship. As such, it is intended that the information will be protected by attorney-client privilege, but it is possible that Top Class Actions or such attorneys may be ordered by a court of law to produce such**

4

> **information in certain legal situations. Also, you are not formally represented by a law firm unless and until a contract of representation is signed by you and the law firm.**

*Id.* at 2 (emphasis in original).

At least one advertising article concerning this MDL included the following disclaimer:

> Top Class Actions is not a law firm, lawyer referral service, or prepaid legal services plan. We do not endorse or recommend any third-party claims processing company, lawyer, or law firm who participates in the network. We do not make any representation, and have not made any judgment, as to the qualifications, expertise, or credentials of any participating lawyer or processing group. No representation is made that the quality of the legal services or claims processing to be performed is greater than the quality of legal services or claims processing performed by other lawyers or claims processing group. The information contained herein is not legal advice. **Any information you submit to Top Class Actions does not create an attorney-client relationship and might not be protected by attorney-client privilege.** Instead, your information will be forwarded to an attorney or claims processing firm for the purpose of a confidential review and potential representation. **You should not use this website to submit confidential, time-sensitive, or privileged information.** All photos contained on this website are of models and do not depict clients.

*Id.* at 9 (emphasis added).

When these articles were published, and at all relevant times,[1] TCA maintained a "Legal Notice" on its website. *See, e.g.*, ECF No. 12-1

---

[1] As the MDL Defendants explain in their first reply memorandum, TCA revised its "Legal Notice" since the filing of the instant motion to compel. ECF No. 12 at 5. TCA does not

5

(archived screenshot dated March 29, 2020).  Under the heading "USER-PROVIDED CONTENT," TCA informed viewers that "[c]ontent and/or information provided by [them] through this website is considered non-confidential and non-proprietary."  ECF No. 12-1 at 4.  Under the subheading "How TCA Discloses Your Personal Information," TCA advised that it "cannot guarantee that the information [viewers] submit will not end up in the hands of the company or person that [they] are complaining about."  *Id.* at 5.

On February 7, 2020, the MDL Defendants served a Rule 45 discovery subpoena on TCA seeking the production of various categories of documents and communications seemingly related to this litigation, including:

> 1. All documents relating to any Claimant[2], including any information collected from any Claimant, analysis of the scope or amount of any Claims[3], database information, forms, presentations, spreadsheets, audio or visual recordings,

---

dispute the authenticity of the archived versions of its "Legal Notice," offered by the MDL Defendants, from March 29, 2020, ECF No. 12-1, and December 16, 2019, ECF No. 12-2, which are materially identical.

[2] Defendants use the term "Claimant" to refer to "(a) all plaintiffs in the CAE MDL and Related Actions, (b) all claimants that entered into the Tolling Agreement with Defendants, (c) all persons that have contacted you regarding potential claims against Defendants based on use of CAE; and (d) all other Persons that have asserted or may assert claims against Defendants based on use of CAE."  ECF No. 1-1 at 6.

[3] Defendants use the term "Claim" to refer to "any claim(s) or cause(s) of action alleging personal injury and associated harms caused by using CAE."  ECF No. 1-1 at 6.

photographs, images, and other any other data or data compilations.

2. All documents relating to any analysis done by you or sent to you by any Person, including any Plaintiffs' Law Firm or any other lawyer, regarding any Claimant(s) or any of their Claims.

3. All documents relating to the referral of any Claimant(s) to a lawyer, including the date of and amount charged for the referral(s).

4. All documents relating to marketing or advertising directed to actual or potential Claimants, or the solicitation of Claimants to join the CAE MDL or any Related Action.

5. All documents relating to your agreements with any Plaintiffs' Law Firm or other lawyers regarding the CAE MDL or Related Actions

6. All communications between you and any Plaintiffs' Law Firm or other lawyers related to the Claimants and any of their Claims.

7. All documents regarding any financial interest that any other Person, including any Plaintiffs' Law Firm, has in you.

8. All documents relating to your ownership by any other Person, including any Plaintiffs' Law Firm.

ECF No. 1-1 at 11–12.

TCA objected to the subpoena in a written letter to the MDL Defendants, ECF No. 1-3, but it eventually agreed to produce select documents responsive to Request Nos. 3, 4, 5, and 6, ECF No. 1-4. TCA objected to Request Nos. 1 and 6 to the extent any responsive documents contained "confidential, attorney-client privileged, or attorney work

product[,]" to Request No. 2 to the extent any responsive documents "were prepared in anticipation of litigation of contain attorney mental impressions or opinions about the case[,]" and to Request Nos. 7 and 8 as "intrusive and unlikely to lead to the discovery of admissible evidence[.]"  ECF No. 1-4 at 3–4.  TCA and the MDL Defendants continued to meet-and-confer on the scope of the subpoena and TCA's objections thereto, including the detail provided in TCA's initial privilege log, which resulted in the production of additional documents.  ECF No. 1 at 2–4; ECF No. 10 at 5.

On June 9, however, TCA maintained its privilege, work product protection, and relevance objections to Request Nos. 1, 2, 6, 7, and 8, ECF No. 1-9, and provided the MDL Defendants an updated privilege log of the documents being withheld, ECF No. 1-10.  Each of the documents on TCA's privilege log is an individual email or email thread regarding the contact information for "a client," "strategy relating to pursuing MDL cases," or an attorney's "rationale," "impressions," "opinion," or "questions" about a "client" or "potential client." *Id.* at 2–4.

## II.  DISCUSSION

The MDL Defendants contend that the assertions of attorney-client privilege and work product protection stemming from a potential plaintiff's

response to TCA's advertising articles are untenable[4] and, thus, seek to compel production of the documents listed in TCA's privilege log.  ECF No. 1.  Because the party invoking the privilege bears the burden of proving its existence, *In re Grandy Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987), and "[t]he inquiry into whether documents are subject to a privilege is a highly fact-specific one," *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000), the Court will examine in turn the parties' arguments as to attorney-client privilege and work product protection.

### A.    TCA's Standing

As an initial matter, the Arizona district court directed TCA and the MDL Defendants to submit supplemental briefs addressing the issue of whether TCA has standing to resist production in response to the MDL Defendants' subpoena based on assertions of attorney-client privilege or work product protection.  ECF No. 22.  TCA, citing the Restatement (Third) of the Law Governing Lawyers, argues it has standing to object because it acts as a lawyer's agent, which "must invoke the privilege when doing so appears reasonably appropriate."  ECF No. 23 at 2, 6.  The MDL

---

[4] Defendants are no longer pursuing additional documents responsive to Request Nos. 7 and 8.  ECF No. 51 at 2 n.1.  Therefore, the Court need not address the parties' arguments as to whether these requests seek discovery relevant to the claims and defenses at issue in this MDL.

Defendants insist that TCA does not have standing because it does not represent either the client or the attorney. ECF Nos. 29, 31.

The Court agrees with the MDL Defendants, and the Arizona district court, that these privileges are typically raised by the party or the party's attorney. *See In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) (the rule governing work product protection "limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought"); *United States v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (the attorney-client privilege "can be invoked only at the instance of the client"). Moreover, TCA fails to provide the Court with any controlling or persuasive authority holding that an "agent" of a party's lawyer may litigate the issue of attorney-client privilege or work product protection in opposition to a motion to compel. Defendants point out that numerous federal courts have held to the contrary. *See, e.g., Syngenta Crop Protection, LLC v. Willowood, LLC*, No. MC16-5019BHS, 2016 WL 7231400, at *3 (W.D. Wash. Dec. 14, 2016); *Compulit v. Banctec, Inc.*, 177 F.R.D. 410, 411 (W.D. Mich. 1997).

The Court, however, need not resolve definitively the question of whether TCA has standing because the MDL Plaintiffs have since intervened in this discovery dispute, asserted attorney-client privilege and

work product protection over the communications in issue, and adopted by incorporation TCA's arguments in support thereof.  ECF No. 50.  Therefore, the Court will only address the merits of the MDL parties' arguments as to these objections.

### B.   Attorney-Client Privilege

The purpose of the attorney-client privilege is to encourage the client to communicate freely with the attorney.  *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990).  The parties agree that Arizona's substantive law on attorney-client privilege applies to this dispute.  Fed. R. Evid. 501.[5]  As such, the MDL Plaintiffs "must show that 1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential."  *Clements v. Bernini in and for Cty. of Pima*, 471 P.2d 645, 651 (Ariz. 2020).  Each of these elements is

---

[5] The parties' choice of law seems correct for at least two reasons.  First, the transferee district court in an MDL applies the state law, including its choice of law rules, of the transferor court.  *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016).  Second, Arizona has the most significant relationship with the communications in issue, *In re: Bard IVC Filters Prods. Liab. Litig.*, MDL No. 15-2641, 2016 WL 3970338, at **1–2 (D. Ariz. July 25, 2016); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 3:09-md-2100-DRH-PMF, 2011 WL 1375011, at *9 (S.D. Ill. Apr. 12, 2011) (citing Restatement (Second) of Conflict of Laws § 139).  In any event, the determination of which state's privilege law applies to this dispute is not a weighty consideration because the elements of the attorney-client privilege discussed herein are hornbook law in any domestic forum.

an essential ingredient without which the bread cannot bake. *Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 469 (D. Ariz. 2001).[6]

The MDL Plaintiffs' claim of attorney-client privilege fails because they cannot show that the information a prospective plaintiff (or "Claimant") submitted in the form accompanying TCA's advertising articles was made in confidence or treated as confidential. Arizona courts have suggested both objective and subjective tests for determining whether a party intended a communication be held in confidence. The subjective test looks to "the state of mind of the client" and "the circumstances under which the communication was made." *State v. Fodor*, 880 P.2d 442, 448 (Ariz. Ct. App. 1994). The objective test looks to "where the client reasonably understood the conference to be confidential." *State v. Sucharew*, 66 P.3d 59, 65 (Ariz. Ct. App. 2003).

The record belies any suggestion that a prospective plaintiff could subjectively or reasonably believe they were submitting information to a lawyer through TCA in confidence or that it would remain confidential. The form itself advised viewers of the possibility that the information would be

---

[6] *See also Evans v. Comcast Corp.*, No. 12-81203-CIV, 2013 WL 12139329, at *3 (S.D. Fla. July 3, 2013) ("If any one of these elements is missing—if the communication is not confidential, if it is not between the attorney and client (or prospective client), or if it does not relate to the matter of representation—the communication at issue is not covered by the privilege.").

12

disclosed, ECF No. 10-2 at 2, one of TCA's articles included a disclaimer explaining that the information submitted "might not be protected by attorney-client privilege" and instructing viewers not to "use [the] website to submit confidential, time-sensitive, or privileged information," *id.* at 9, and, perhaps most importantly, TCA's "Legal Notice" stated that "[c]ontent and/or information provided by [viewers] through this website is considered non-confidential and non-proprietary," ECF No. 12-1 at 4.  Having been so warned, any claim that a potential plaintiff believed the information would be held by TCA in confidence rings hollow.  *See In re General Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2018 WL 611759, at *1 (S.D.N.Y. Jan. 29, 2018) (the information submitted through the TCA website was not protected under attorney-client privilege); *U.S. E.E.O.C. v. ABM Indust. Inc.*, 261 F.R.D. 503, 510 (E.D. Cal. 2009) (the attorney-client privilege did not apply to a potential client questionnaire when it did not "promise or intimate in any way that information disclosed in completing the questionnaire would remain confidential").

The cases cited by the MDL Plaintiffs are inapposite.  There is no meaningful dispute that responses to an attorney's questionnaire to solicit clients or evaluate potential claims can be privileged in certain circumstances.  *See Deslandes v. McDonald's USA, LLC*, No. 1:17-cv-

13

4857, 2019 WL 7480646 at *5 (N.D. Ill. July 17, 2019) (collecting cases). Take for example *Barton v. U.S. Dist. Court for the Central Dist. of Cal.*, where, unlike here, the Ninth Circuit concluded there was no disclaimer of confidentiality because "the word 'confidentiality' nor the substance of a disclaimer of confidentiality [could] be found in the online questionnaire." 410 F.3d 1104, 1110 (9th Cir. 2005).[7] And *Vodak v. City of Chicago*, where, unlike here, the questionnaire "promise[d] that the information provided [would] be held in strict confidence and used only by the attorneys providing legal representation." No. 03-C-2463, 2004 WL 783051, at *2 (N.D. Ill. Jan. 16, 2004).

The cases following *Vodak*, and offered by the MDL Plaintiffs, are not persuasive because they did not address the confidentiality element of attorney-client privilege, or they appear to conflate it with the requirement that the communication was made to secure or provide legal advice. *See Deslandes*, 2019 WL 7480646, at *5 ("Courts in this district have generally found that these types of submissions to law firms are privileged if the person completing the questionnaire sought legal advice."); *E.E.O.C. v. Scrub, Inc.*, No. 09-C-4228, 2010 WL 2136807, at *9 (N.D. Ill. May 25,

---

[7] The Ninth Circuit's decision in *Barton* also rested on a presumption of confidentiality in California law that does not apply in Arizona. 410 F.3d at 1110.

2010) ('Where the questionnaires are completed by persons seeking legal representation, the privilege extends."). This Court, instead, must take care to examine independently each essential element of the privilege—attorney-client relationship, communication to secure or provide legal advice, and confidentiality—because "not all communications to one's lawyer are privileged." *Samaritan Found. v. Goodfarb*, 862 P.2d 870, 874 (Ariz. 1993).

In sum, the information a prospective plaintiff submitted to a lawyer through TCA's website is not subject to the attorney-client privilege because it was not made in confidence or expected to be treated as confidential. TCA's website expressly disclaimed any such intentions when it warned viewers that it could not "guarantee that the information [viewers] submit[ted would] not end up in" the MDL Defendants' hands. ECF No. 12-1 at 5. Therefore, TCA may not resist compliance with the MDL Defendants' Rule 45 subpoena based on the attorney-client privilege.

## C.   Work Product Protection

Similar to the attorney-client privilege, the purpose of the work product protection "is to protect the integrity of the adversary process by allowing a lawyer to work 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Drummond*

*Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)); see also *In Re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977) ("The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party."). The work product protection, nevertheless, "is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).

Federal Rule of Civil Procedure 26(b)(3)(A) prohibits a party from discovering, with some exception, "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). "The testing question for the work-product privilege ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998). In other words, "the key determinations in assessing the applicability of the work product privilege are when and why the document or thing was created." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 1321522, at *6 (N.D. Fla. Mar. 20, 2020).

16

The MDL Plaintiffs' claim of work product protection is fraught with peril. First, the Court is not persuaded that the information being withheld qualifies as work product. The MDL Plaintiffs, ECF No. 50 at 16–17, adopt TCA's assertion that it "redacted communications between TCA and the law firms relating to the attorney advertising" because "[t]he lawyers' comments on the marketing reflects their opinions of the claim and strategy," ECF No. 10 at 13. The communications in issue were created for the business purposes (marketing and advertising) of the attorneys utilizing TCA's services, not in anticipation of impending litigation for a particular plaintiff. *See Drummond Co., Inc.*, 885 F.3d at 1334–35 ("Attorney work product protection extends to material obtained or prepared by counsel *in the course of their legal duties* provided that the work was done *with an eye toward litigation*." (emphasis added)). As such, it is not work product exempt from production when it is otherwise discoverable. *See Holbourn v. NCL (Bahamas) Ltd.*, 305 F.R.D. 685, 687 (S.D. Fla. 2014) (work product protection does not extend to "materials or documents drafted or created in the ordinary course of business"); *Shaprio v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 36–37 (D.D.C. 2013) (documents "untethered to any particular claim in litigation" and not revealing "any legal

17

strategy or other case-specific legal considerations" were not attorney work product).[8]

Second, the MDL Plaintiffs' assertion of any "common interest" exception to waiver misses the mark. The "common interest" exception allows a party to share its work product with a third party without waiving the right to assert protection only "when the parties have a shared interest in actual or potential litigation against a common adversary[.]" *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, No. 09-21208-CIV, 2011 WL 2682958, at *4 (S.D. Fla. July 11, 2011). The problem for the MDL Plaintiffs is that the nature of the "common interest" between the advertising attorneys and TCA was solely commercial, not legal. *Id.* That is, TCA's role was to advertise for paying attorneys, not to assist them in litigation against the MDL Defendants. TCA does not have any legal interest in the MDL Plaintiffs' litigation, and the MDL Defendants are not an adversary to TCA. Indeed, TCA is not in the position to provide legal advice or discuss litigation strategy in any particular case because it "does not review the content of the form submissions for any purpose other than assisting the

---

[8] The facts of this dispute are easily distinguishable from that addressed by this Court in another MDL, where a corporate client retained a marketing firm to "assist … in-house legal departments in monitoring and analyzing media coverage as part of in-house counsel's strategies and legal advice relating to threatened and ongoing litigation and actions by regulatory agencies[.]" *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2738, 2017 WL 6757558, at *9 (N.D. Fla. Dec. 29, 2017).

law firm with its marketing." ECF No. 10-1 at 2. Therefore, any communication by the advertising attorneys to TCA reflecting the attorneys' mental impressions about a particular case or claim in this MDL is inconsistent with the maintenance of secrecy to avoid disclosure to the MDL Defendants, *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010), such that any work product protection was waived.

In sum, the communications between TCA and advertising attorneys described above do not enjoy work product protection and must be disclosed to the MDL Defendants.

### III.  CONCLUSION

Accordingly, it is **ORDERED** that the MDL Defendants' Motion to Compel Discovery from Top Class Actions, ECF No. 1, is **GRANTED**. Objections to the MDL Defendants' Rule 45 subpoena based on attorney-client privilege and work product protection are **OVERRULED**.

**DONE AND ORDERED** this 12th day of March 2021.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge